IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **VIRGINIA WINONA KODASEET,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-19-414-STE |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-21). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2014, her alleged onset date. (TR. 12). At step two, the ALJ determined that Ms. Kodaseet had the following severe impairments: depression; anxiety; and post-traumatic stress disorder. (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 14).

At step four, the ALJ concluded that Ms. Kodaseet retained the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional mental limitations: the claimant can understand and perform "simple" tasks under routine supervision; "simple" means unskilled entry level work with a SVP of one, which can be learned by a simple demonstration, and a SVP of two, which can be learned in thirty days or less; the claimant can interact with supervisors and co-workers on a "superficial" level: "superficial" means brief, succinct, cursory, concise, communication relevant to the task being performed; the claimant cannot interact with the general public; and the claimant can adapt to a work situation. The claimant has no other mental limitations or restrictions. The claimant has no physical limitations or restrictions.

(TR. 16).

With this RFC, the ALJ concluded that Ms. Kodaseet was able to perform her past relevant work as a hotel housekeeper. (TR. 20). As a result, the ALJ concluded, at step four, that Plaintiff was not disabled. (TR. 20).

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, ___ F.3d. ___, 2020 WL 1057276, at *4 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV. ISSUE PRESENTED

Ms. Kodaseet alleges the ALJ improperly considered Plaintiff's mental impairments. (ECF No. 16:8-11).

## V.  NO ERROR IN THE CONSIDERATION OF PLAINTIFF'S MENTAL IMPAIRMENTS

As stated, Ms. Kodaseet alleges error in the ALJ's consideration of Plaintiff's mental impairments. Specifically, Plaintiff alleges the ALJ: (1) "erred in his consideration of Kodaseet's mental limitations by only considering the findings of the various mental status examinations while ignoring the subjective statements concerning her mental limitations" and (2) "selectively considered the evidence when determining the severity of Kodaseet's social abilities." (ECF No. 16:8, 9). The Court rejects both allegations of error.

### A.  Plaintiff's First Proposition

Regarding the first proposition, Ms. Kodaseet fails to develop her argument. Plaintiff states that "[t]he ALJ erred in his consideration of Kodaseet's mental limitations by only considering the findings of the various mental status examinations while ignoring the subjective statements concerning her mental limitations." (ECF No. 16:8). Ms. Kodaseet then states:

> Focusing solely on objective findings conflicts with the methods used by the psychological medical community…. Nothing requires a psychological opinion to be based exclusively on objective tests. Psychological opinions can be dependent on observed signs and the patient's symptoms, or on psychological tests. An ALJ cannot reject a psychologist's opinion just because it was based on a claimant's subjective complaints. By doing so, the ALJ is questioning a medical professional on the evaluation of medical data, and improperly substitutes his or her opinion for that of the medical professional.

(ECF No. 16:8-9) (internal citations omitted). Plaintiff then segues to her next argument, stating: "Additionally, the ALJ selectively considered the evidence when determining the severity of Kodaseet's social abilities." (ECF No. 16:9). Plaintiff develops *that* argument,

citing specific evidence which Plaintiff believes the ALJ had overlooked. *See* ECF No. 16:9-11; *see infra*. But the Court finds Plaintiff's first argument undeveloped.

Although Ms. Kodaseet: (1) generally challenges an ALJ's reliance solely on objective findings when assessing a claimant's mental impairments and (2) argues that an ALJ cannot reject a psychologist's opinion just because it was based on a claimant's subjective complaints, Ms. Kodaseet does not actually argue that the ALJ in this case had committed either error.[1] Accordingly, the Court rejects Plaintiff's first proposition. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on a claimant's behalf when argument on an issue is "insufficiently developed"); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (noting that "perfunctory complaints fail to frame and develop an issue sufficient to invoke [judicial] review."); *Chrismon v. Colvin*, 531 F. App'x 893, 896 (10th Cir. 2013) (stating that on judicial review, "it is not [the court's] role to shore up [a claimant's] argument for h[er].") (citation omitted).

### B.     Plaintiff's Second Proposition

For Plaintiff's second allegation of error, she contends that the ALJ erred in evaluating her mental impairments at steps two and four by selectively reviewing the evidence. (ECF No. 16:9-11). The Court disagrees.

---

[1] Indeed, the record supports contrary conclusions. *See* TR. 16-17 (ALJ's summary of Plaintiff's testimony, and statement that the ALJ had "considered all [Plaintiff's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the medical evidence); TR. 19-20 (ALJ's according "great weight" to opinions from two state agency physicians and one consultative examiner who had assessed Plaintiff's mental status).

### 1. ALJ's Duty to Assess Mental Impairments

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a; 416.920a (2018) (effective Mar 27, 2017). In evaluating the severity of mental impairments at steps two and three, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). After rating the degree of limitation in each functional area, the Commissioner determines the severity of Plaintiff's mental impairments. 20 C.F.R. §§ 404.1520a(d); 416.920a(d). When all functional areas are rated as "none" or "mild," the agency will generally conclude at step two of the sequential evaluation process that Plaintiff's mental impairments are not severe. 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1). If the mental impairments are severe (step two), the technique requires an evaluation of whether the impairment meets or equals a listed mental disorder by comparing the step two findings and the medical evidence with the criteria of the listings (step three). 20 C.F.R. §§ 404.1520a(d)(2); 416.920a(d)(2). If the Commissioner determines that Plaintiff's mental impairments do not meet or equal a listing, he will then assess Plaintiff's RFC (step four). 20 C.F.R. §§ 404.1520a(d)(3); 416.920a(d)(3).

### 2. No Error at Step Two

While employing this technique and assessing the severity of Plaintiff's mental impairments, the ALJ found that Ms. Kodaseet had a "moderate limitation" in the

6

functional areas of "understanding, remembering, or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace." (TR. 14-15). Thus, at step two, the ALJ concluded that Plaintiff's mental impairments were "severe." *See supra*.

In reaching the conclusion that Plaintiff was moderately limited in her ability to interact with others, the ALJ stated that Plaintiff was "able to maintain meaningful relationships with family and friends." (TR. 15). Plaintiff alleges error related to this finding, stating that the ALJ "selectively considered the evidence when determining the severity of Kodaseet's social abilities," by ignoring evidence which undermined his conclusion. (ECF No. 16:9). But Plaintiff's step two error fails as a matter of law, because the ALJ found severe impairments at step two and proceeded to the remaining steps of the sequential analysis. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (no reversible error at step two "when the ALJ finds that at least one other impairment is severe.").

### 3. No Error at Step Four

Next, Plaintiff alleges error at step four, arguing: "the ALJ improperly based his RFC findings on Kodaseet's ability to interact with others on a selective review of the evidence." (ECF No. 16:11). According to Plaintiff, "the ALJ found Kodaseet capable of superficial interaction with supervisors and coworkers, [but] his decision fails to show he considered the evidence which conflicts with this finding." (ECF No. 16:9). The Court finds no merit to this argument.

As examples of evidence which allegedly conflicted with the RFC, Ms. Kodaseet cites statements she made to consultative psychologist, Dr. Eddie Scott, that she: (1) was fired from her last job because of a conflict between herself and a co-worker; (2) is extremely uncomfortable around other people; and (3) believes other people do not like her, but she does not understand why. *See* ECF No. 16:9; TR. 488.

Although the ALJ did not specifically reference this "evidence" in the administrative decision, the ALJ discussed and accorded "great weight" to the opinion of Dr. Scott, who *had* considered the evidence. *See* TR. 19; 488. Ultimately, Dr. Scott opined that Plaintiff retained a "fair" ability to "understand, remember and carry out simple and complex instructions in a work related environment." (TR. 491). In doing so, Dr. Scott made no other findings that Plaintiff was otherwise limited in interacting with others. *See* Tr. 491. Because "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question,"[2] the Court concludes that Dr. Scott's opinion is consistent with the RFC determination that Plaintiff was capable of performing " 'simple' tasks under routine supervision" and interacting with supervisors on a "superficial" level. (TR. 16). As a result, the Court rejects Plaintiff's argument that "the ALJ improperly based his RFC findings … on a selective review of the evidence." (ECF No. 16:11).

---

[2] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

**ORDER**

The Court has reviewed the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on April 17, 2020.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE